1

2

3

4

5

6

7

8                          IN THE UNITED STATES DISTRICT COURT

9                        FOR THE EASTERN DISTRICT OF CALIFORNIA

10   ROBERT ELLIS,

11              Plaintiff,                     No. CIV S-11-2954 DAD P

12        vs.

13   RICK HILL et al.,                         ORDER AND

14              Defendants.                    FINDINGS AND RECOMMENDATIONS

15   _____/

16              Plaintiff is a state prisoner proceeding pro se with a civil rights action seeking

17   relief under 42 U.S.C. § 1983.  This matter is before the court on a motion for summary

18   judgment brought on behalf of defendants Keener and Morris pursuant to Rule 56 of the Federal

19   Rules of Civil Procedure.  Plaintiff has filed an opposition to the motion, and defendants have

20   filed a reply.  Plaintiff has also filed several unauthorized responses to defendants' reply.

21                                    **BACKGROUND**

22              Plaintiff is proceeding on his original complaint against defendants Keener and

23   Morris in this action.  Plaintiff alleges that his "mentally insane" cellmate Fuller attacked him.

24   He further alleges that defendants knew about Fuller's mental state but ignored Fuller when he

25   complained of hearing voices and feeling violent tendencies.  Plaintiff claims that despite that

26   knowledge, defendants failed to protect him from Fuller in violation of plaintiff's rights under

                                           1

the Eighth Amendment and requests the award of damages.  (Compl. at 5 & Attach.)

**SUMMARY JUDGMENT STANDARDS UNDER RULE 56**

Summary judgment is appropriate when it is demonstrated that there exists "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

> Under summary judgment practice, the moving party
> always bears the initial responsibility of informing the district court
> of the basis for its motion, and identifying those portions of "the
> pleadings, depositions, answers to interrogatories, and admissions
> on file, together with the affidavits, if any," which it believes
> demonstrate the absence of a genuine issue of material fact.

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)).  "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'"  Id.  Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.  See id. at 322.  "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."  Id.  In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is satisfied."  Id. at 323.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist.  See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the

dispute exists.  See Fed. R. Civ. P. 56(e); Matsushita, 475 U.S. at 586 n.11.  The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor.  It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial."  T.W. Elec. Serv., 809 F.2d at 631.  Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'"  Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments).

In resolving the summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any.  Fed. R. Civ. P. 56(c).  The evidence of the opposing party is to be believed.  See Anderson, 477 U.S. at 255.  All reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party.  See Matsushita, 475 U.S. at 587.  Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn.  See Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987).  Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . .  Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'"  Matsushita, 475 U.S. at 587 (citation omitted).

**OTHER APPLICABLE LEGAL STANDARDS**

I.  Civil Rights Act Pursuant to 42 U.S.C. § 1983

The Civil Rights Act under which this action was filed provides as follows:

> Every person who, under color of [state law] . . . subjects, or causes
> to be subjected, any citizen of the United States . . . to the
> deprivation of any rights, privileges, or immunities secured by the
> Constitution . . . shall be liable to the party injured in an action at
> law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983.  The statute requires that there be an actual connection or link between the actions of the defendants and the deprivation alleged to have been suffered by plaintiff.  See Monell v. Department of Social Servs., 436 U.S. 658 (1978); Rizzo v. Goode, 423 U.S. 362 (1976).  "A person 'subjects' another to the deprivation of a constitutional right, within the meaning of  § 1983, if he does an affirmative act, participates in another's affirmative acts or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made."  Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978).

Moreover, supervisory personnel are generally not liable under § 1983 for the actions of their employees under a theory of respondeat superior and, therefore, when a named defendant holds a supervisorial position, the causal link between him and the claimed constitutional violation must be specifically alleged.  See Fayle v. Stapley, 607 F.2d 858, 862 (9th Cir. 1979); Mosher v. Saalfeld, 589 F.2d 438, 441 (9th Cir. 1978).  Vague and conclusory allegations concerning the involvement of official personnel in civil rights violations are not sufficient.  See Ivey v. Board of Regents, 673 F.2d 266, 268 (9th Cir. 1982).

II.  The Eighth Amendment and Failure to Protect

The Eighth Amendment prohibits the infliction of "cruel and unusual punishments."  U.S. Const. amend. VIII.  The "unnecessary and wanton infliction of pain" constitutes cruel and unusual punishment prohibited by the United States Constitution.  Whitley v. Albers, 475 U.S. 312, 319 (1986).  See also Ingraham v. Wright, 430 U.S. 651, 670 (1977); Estelle v. Gamble, 429 U.S. 97, 105-06 (1976).  Neither accident nor negligence constitutes cruel

4

1   and unusual punishment, as "[i]t is obduracy and wantonness, not inadvertence or error in good

2   faith, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause."

3   Whitley, 475 U.S. at 319.

4            What is needed to show unnecessary and wanton infliction of pain "varies

5   according to the nature of the alleged constitutional violation." Hudson v. McMillian, 503 U.S.

6   1, 5 (1992) (citing Whitley, 475 U.S. at 320).  It is well established that "prison officials have a

7   duty . . . to protect prisoners from violence at the hands of other prisoners." Farmer v. Brennan,

8   511 U.S. 825, 833 (1994).  "Being violently assaulted in prison is simply not 'part of the penalty

9   that criminal offenders pay for their offense against society.'" Id. at 834.  However, prison

10  officials do not incur constitutional liability for every injury suffered by a prisoner at the hands of

11  another prisoner.  Id.

12           To prevail on such a claim the plaintiff must show that objectively he suffered a

13  "sufficiently serious" deprivation. Farmer, 511 U.S. at 834; Wilson v. Seiter, 501 U.S. 294, 298-

14  99 (1991).  The plaintiff must also show that subjectively each defendant had a culpable state of

15  mind in allowing or causing the plaintiff's deprivation to occur.  Farmer, 511 U.S. at 834.  In this

16  regard, a prison official violates the Eighth Amendment "only if he knows that inmates face a

17  substantial risk of serious harm and disregards that risk by failing to take reasonable measures to

18  abate it."  Id. at 847.  Under this standard, a prison official must have a "sufficiently culpable

19  state of mind," one of deliberate indifference to the inmate's health or safety.  Id.

20                                            **ANALYSIS**

21           Defense counsel argues, and the undersigned finds, that defendants Keener and

22  Morris have borne their initial burden of demonstrating that there is no genuine issue of material

23  fact with respect to the adequacy of protection provided by defendants to plaintiff on October 16,

24  2008.  Specifically, the evidence submitted by the defendants in support of their motion for

25  summary judgment establishes the following.  On October 16, 2008, plaintiff shared a cell with

26  inmate Fuller and was involved in an altercation with him in their shared cell.  At approximately

1738 hours, a correctional officer in Folsom State Prison's ("FSP") Unit II alerted personnel of a "man down" situation in plaintiff's cell.  Within seconds, the call changed to a Code One Alarm, which signals a disturbance that requires an immediate response from all available correctional staff.  Defendant Keener, who was the ranking correctional sergeant assigned to Unit II at the time, as well as other correctional staff responded to plaintiff's cell upon hearing the alarm.  Defendant Morris, who was the ranking correctional lieutenant on Unit II at the time, maintained overall security on the floor and did not respond to the incident site.  (Defs.' SUDF 3-9, Keener Decl. & Morris Decl.)

Upon their arrival the staff responding to the cell observed plaintiff and inmate Fuller lying on the cell floor.  Staff secured and escorted both inmates to the Triage and Treatment Area.  They both received medical evaluations and clearance and were rehoused in administrative segregation.  Plaintiff received a rules violation report for his role in the altercation with inmate Fuller.  At a later disciplinary hearing, prison officials found him guilty of "Battery on an Inmate with Serious Bodily Injury."  (Defs.' SUDF 10-16, Keener Decl., Morris Decl., Delgado Decl. Ex. B.)  Subsequently, prison officials reduced the disciplinary charge against plaintiff to "Mutual Combat" and assessed plaintiff a 90-day credit forfeiture for his role in the alteration.  (Id.)

According to plaintiff's responses to discovery requests propounded by defendants, prior to October 16, 2008, inmate Fuller had never threatened plaintiff.  (Defs.' SUDF 17-24, Keener Decl., Morris Decl., Delgado Decl. Exs. A-C.)  Nor did plaintiff ever speak with defendants Keener or Morris to ask for a cell change or to report that inmate Fuller was acting unusually.  (Id.)  On October 16, 2008, before his altercation with inmate Fuller, plaintiff told inmate Fuller that he (Fuller) needed to talk to correctional officer Prester about changing cells because inmate Fuller was making him nervous.  (Id.)  Plaintiff saw and heard inmate Fuller talk to officer Prester some time later that date.  (Id.)  Plaintiff did not see inmate Fuller talk to defendant Kenner or defendant Morris.  (Id.)  Nor did inmate Fuller talk to defendant Keener or

6

1  defendant Morris about any issues affecting his mental health that day.  (<u>Id</u>.)

2           Defendants Keener and Morris do not recall seeing inmate Fuller display any

3  unusual behaviors prior to the altercation with plaintiff.  (Defs.' SUDF 25-31, Keener Decl.,

4  Morris Decl.)  They also did not know whether inmate Fuller was involved with any violent

5  incidents at other CDCR institutions - as an aggressor or as a victim - prior to his arrival at FSP.

6  (<u>Id</u>.)  Given the number of inmates defendants Keener and Morris are responsible for, they are

7  not familiar with the disciplinary history of every inmate in their custody, and they do not

8  generally review inmates' central files unless there is a need to do so.  (<u>Id</u>.)  Due to CDCR's

9  policies concerning medical confidentiality, defendants Keener and Morris are not made aware of

10 any inmate's preexisting medical conditions unless they or other staff directly observe any related

11 behaviors or unless the inmate's condition requires special handing.  (<u>Id</u>.)  Defendants Keener

12 and Morris also did not know whether inmate Fuller had ever been diagnosed with any mental

13 illnesses or other medical conditions.  (<u>Id</u>.)  Nor did they know what medication, if any, inmate

14 Fuller was taking at the time of the altercation.  (<u>Id</u>.)  Medical staff handles inmate medications,

15 so defendants Keener and Morris had no reason to know what medications inmate Fuller was

16 taking.  (<u>Id</u>.)

17          Based on defendants' evidence, the court finds that defendants Keener and Morris

18 did not know of or disregard any substantial risk of serious harm to plaintiff's health or safety.

19 <u>Farmer</u>, 511 U.S. at 844.  Thus, the burden shifts to plaintiff to establish the existence of a

20 genuine issue of material fact precluding summary judgment in defendants' favor.  The court has

21 considered plaintiff's unverified opposition to the pending motion for summary judgement as

22 well as the allegations of his complaint.  In this case, the undersigned finds that plaintiff has

23 failed to submit sufficient evidence to establish a legitimate dispute as to any genuine issue of

24 material fact.

25          Specifically, plaintiff has not submitted any evidence to show that defendants

26 Keener and Morris were deliberately indifferent to his health and/or safety.  Plaintiff argues that

1   defendants' claim that they were not aware of inmate Fuller's mental state is "extremely

2   deceptive" because defendant Morris sits on the classification board and reads inmate's central

3   files, and any information he would have learned he would have passed down to defendant

4   Keener because they work as a unit.  Based on the positions they hold, plaintiff contends that

5   defendants Keener and Morris must have known that inmate Fuller had a prior "mental episode"

6   at CSP-Delano, which caused an inmate to stab Fuller and resulted in Fuller's transfer to FSP.

7   Plaintiff also argues that defendant Keener approached him on an unspecified date and told him

8   that inmate Fuller was going to move cells, but the building was "full" at the time so he had to

9   wait for the cell move.  Based on this interaction, plaintiff contends that inmate Fuller must have

10  spoken to defendant Keener at some point about needing to move cells.  (Pl.'s Opp'n to Defs.'

11  Mot. for Summ. J. at 1-4.)

12          Even assuming for the sake of argument that defendants Keener and Morris knew

13  of plaintiff's alleged mental status and prior "mental episode" at CSP-Delano and that defendant

14  Keener knew inmate Fuller was going to move cells at some point, plaintiff has not submitted

15  any evidence to this court on summary judgment suggesting that the defendants knew or should

16  have known that inmate Fuller was going attack plaintiff on the day in question.  "[P]rison

17  officials who lacked knowledge of a risk cannot be said to have inflicted punishment."  See

18  Farmer, 511 U.S. at 844.  Under the deliberate indifference standard, a prison official must have

19  more than a "mere suspicion" that an attack will occur.  See Berg v. Kincheloe, 794 F.2d 457,

20  459 (9th Cir. 1986).  In this case based upon the evidence submitted on summary judgment, at

21  most, it appears that one officer Prester may have been aware of plaintiff's concerns about a

22  possible attack by inmate Fuller.  However, plaintiff did not name officer Prester as a defendant

23  in this action.

24          Given the circumstances of this case and evidence submitted on summary

25  judgment, no reasonable fact finder could conclude that defendants Keener or Morris knew or

26  should have known of a substantial risk of serious harm to plaintiff and disregarded that risk.

1    Accordingly, the court concludes that the defendants are entitled to summary judgment in their

2    favor with respect to plaintiff's Eighth Amendment claims.[1]

3    **CONCLUSION**

4    IT IS HEREBY ORDERED that the Clerk of the Court is directed to randomly

5    assign a United States District Judge to this action.

6    IT IS HEREBY RECOMMENDED that:

7    1.  Defendants' motion for summary judgment (Doc. No. 25) be granted; and

8    2.  This action be closed.

9    These findings and recommendations are submitted to the United States District

10    Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen

11    days after being served with these findings and recommendations, any party may file written

12    objections with the court and serve a copy on all parties.  Such a document should be captioned

13    "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections

14    shall be served and filed within seven days after service of the objections.  The parties are

15    advised that failure to file objections within the specified time may waive the right to appeal the

16    District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

17    DATED: April 15, 2013.

18

19

                 DALE A. DROZD
20    DAD:9            UNITED STATES MAGISTRATE JUDGE

   elli2954.57

21

22

23

24    [1]  In reply to plaintiff's opposition, defendants submitted a series of evidentiary objections to plaintiff's exhibits.  In light of the findings and recommendations herein, the court finds it

25    unnecessary to address these objections.  Rather, the court has considered all of plaintiff's filings both authorized and unauthorized in concluding that defendants are entitled to summary

26    judgment.